Good morning. May it please the court. My name is Niran Rose Rashi and I represent the interim, I am interim lead counsel for the McAuliffe plaintiff appellants and the putative class of similarly situated consumers. Thank you all for your time this morning. The plaintiffs here are consumers who purchased season prepaid for the entire season at once but were not able to use their passes for a substantial portion of the season because, as we know, all of Vail's resorts were closed on March 15, 2020 and remained closed for the remainder of the season. The issue before this court on de novo review is simply whether the plaintiffs here state a claim on which relief can be granted. That issue was dealt with in a fairly straightforward manner in the briefing below. However, the resulting order from the district court and Vail's brief on appeal are full of distractions. The district court ignored some allegations, misunderstood others, and drew quite a few conclusions not advocated by the parties based on to adopt much of the reasoning and many of the conclusions drawn by the district court. Instead, Vail insisted, despite very clear briefing, that plaintiffs are making a number of arguments that plaintiffs simply do not make. We are confident that this court can distinguish between allegations and arguments actually made by plaintiffs and the mischaracterizations seen elsewhere. Well, help us do that as it relates or help me do that as it relates to the role that refunds play in your argument. In your brief, it appears that you're arguing that refunds are a remedy for a breach of contract. That is correct. Well, in your complaint, there are places where it appears that you are element of breach itself, that they breached the contract by not giving a refund. So which one is it or are you saying it's both? No, Your Honor, we are not saying that it's both and if there are places in the complaint where the refunds do appear to be anything other than the remedy for breach of contract, then that was simply inartfulness on our part. Well, if you're arguing, all right, that's important. That's a clarification for me. If, then, refund is not a component of breach and there are places in your argument, as I understood in your brief, where you essentially acknowledge that you're not faulting them for closing. You're saying that there should be some consequences for closing. Well, by not faulting them for closing, I get the impression that their closing is not a breach. Are you saying their closing was a breach? What is the breach? Because if it's not the refund, not giving a refund, and if it's not the closing itself, then what's the nature of the breach? So, I have a number of responses to that, Your Honor, and thank you for raising it. The breach is the closing. We don't fault Vail for that. We have not argued and do not argue now that Vail should not have closed. However, you referred to the concept of consequences, and I think what we're talking about here is not consequences for the breach, but simply the return of prepaid funds. Vail had collected funds for the entire season and made a promise to provide access for the entire season, and regardless of the reason that that did not occur, the purchasers of the pass didn't have access for the entire season, and so the breach is the closing, regardless of the reasons for it. I'm sorry, I just have to stop you there. So, how can you breach when you say that closing is appropriate? That I'm not getting. Can you explain that? Well, it's contrary to the terms of the contract. So, that is the breach of contract? Correct. The closing is the breach. So, they shouldn't have closed? No, Your Honor. Help me understand. Okay, I'd What we allege and argue is that there was a promise of access for the entire season. There was a breach. Now, because there was a breach doesn't necessarily mean that Vail was acting in the wrong, that it was acting in bad faith, that it was doing something that it shouldn't done, but it does mean that the passholders didn't get what they paid for, and that Vail did not earn all of the money that had been prepaid at the time of contracting. And so, another way to look at this, and I think it's important to talk about, is that the facts do lend themselves to application of the doctrine of frustration of purpose. It would be an entirely plausible view of the facts alleged that because of the unforeseen pandemic, which occurred midway through Vail's performance of the contract, that Vail's remaining obligations at that point were discharged. The plaintiffs, of course, by March 15th, 2020, well before that, had performed in full. They had paid for the entire season. Vail had some continuing obligations at that point, and it's entirely plausible that the pandemic could be seen to have frustrated the purpose of the contract, thus discharging Vail's continuing obligations, but under principles of contract law and the restatement of contracts, then restitution would be due for the unearned funds. So, whether you look at it as a breach of contract, or whether you look at it as a frustration of the purpose of the contract, a remedy is due to plaintiffs in the form of a return of the funds that they prepaid and were not able to get the benefit of. Well, I understand that you want to get the funds for your clients, but it matters whether we're looking on a claim by claim basis, whether the claim stands on its own legs, right? So, you're saying that, well, you could view this as a frustration of purpose, such that Vail was discharged from their obligation under the contract. That would mean that you would accept that there is a theory under which there is no breach of contract, right? I think that we plead those in the alternative, and I think from our perspective, it would be one or the other. Those would be alternative theories of the claim. One or the other. All right, well, I thought I was going to say today that we're not saying that Vail acted in bad faith in closing. Well, you have a breach of implied covenant, I think, of good faith is pled as a claim. Well, if you're acknowledging that they weren't in the wrong in closing under the circumstances, then what basis is there for your breach of that implied covenant of good faith? I'm glad that you made it clear that we are not alleging bad faith in the closing. However, the breach, the claim for breach of the implied covenant of fiduciary duty is not based on the closing. It is based on the determination of a term that was left open by the contract. In other words, the contract contains the term season. That term is not defined. The closing date is a term that was left open and left to Vail's discretion. And the implied covenant of good faith would require Vail to exercise its discretion to determine the closing date based on the other party's justified expectations. And here, the plaintiffs had would be determined in a manner consistent with how it had always been determined, snow and weather conditions. And so one course of action that Vail could have taken here, and we think it would have been the right one, would have been to determine the closing date in the manner they had always done and then calculate and issue prorated refunds. That's not what Vail did. Instead, when Vail closed, and to be clear, we're not arguing that they shouldn't have closed, but when they did close, they called that the season end date. And that is not consistent with the manner in which they had determined the end of the season in all prior years. As clearly alleged in the complaint, there are allegations of prior performance which establish a reasonable expectation about what the closing date will be. And when Vail exercised its discretion to call March 15th, 2020, the closing date of the ski season and therefore keep all of the money it had collected on a prepaid basis and not earned, that was the breach of the implied covenant of good faith and fair deal. So it wasn't the closure, it was the failure to give a refund. It was a breach that you're saying. It is the determination of the closing date. Well then, if that's what it is, then I have the same problem that the Chief Judge has, is in that you've already said that you don't claim that they wrongfully closed because of the pandemic, so how can you say that they acted in bad faith when they closed because of the pandemic? It's not the closure, Your Honor, that is that we contend it was done in bad faith. It was the determination of the term that was left open in a manner that allowed them to keep all of the unearned funds. So, I mean, I can understand your claim if you're saying it focuses on the failure to give a refund. I don't see any daylight between that we don't object to them, we don't have any problem with them closing, and we have a bad faith claim because they closed too early. Because they didn't close based on snow conditions, they closed based on the pandemic. They closed, so to be some explanation, but it is consistent with the plaintiff's reasonable expectations that the closure date would be based on snow and weather conditions. And what we've, specifically with respect to Chief Judge Holmes's question regarding the implied covenant of good faith, in connection with that claim, the breach of the implied covenant of good faith is the determination of a closure date that is entirely inconsistent with the way it had been done in all prior years and what the plaintiffs expected. And then, of course, from the closure date, as Vail unilaterally determined it in a manner that was inconsistent with the expectations of the plaintiffs, that, you know, Vail used that as a reason to keep all the unearned funds, and so it is that component of Vail's conduct that we view as a breach of the implied covenant of good faith, not the closure itself. And if I can restate that to make sure I understand, you're not objecting to the fact that they closed. What you're objecting to is the fact that they said, we're closing per the season. The season is over, and therefore we're closing. In other words, the consequences of saying, this is the end of the season, and therefore we close, is they don't owe you any money. That's different than saying, well, we're going to close because of the pandemic. That doesn't address the question of what should be the end of the season and the reasonable expectation as to when you would ordinarily close. That is exactly correct, Your Honor. There is a tremendous difference between closing on March 15, 2020, and calling it the end of the season, and closing on March 15, 2020, and acknowledging that you have closed well before the end of the ski season. So can you just tell me then back to the refunds? Sure. And specifically the no refund clause. Tell me how you get around that. I understand your theory now. I appreciate that. Great. And I'd love to talk about that as well. Thank you for the question. The no refund clause was, plaintiffs alleged that they understood that that was language. Of course, most of us, we're all consumers, we've all seen no refund language before. And what they allege is that they understood that language to mean that if they lost their jobs, or got a broken leg, or had some kind of family circumstances that would prevent them from being able to go to the resorts to use their passes, that they could not go to bail based on their own personal circumstances and say, you know what, I'm not going to ski after all, I would like my money back. That's what they understood the no refund clause to mean. And it was a complete surprise to all of the plaintiffs when the shutdown occurred. And they'll invoke that language to say, you know, although we have closed well before the end of the season, we're not going to give you a refund that you need and couldn't use. So in other words, no refunds, it's simply something that happens to the skier, the ski pass owner. Correct. That was their understanding that it wouldn't discharge a wholesale breach by bail, you know, that would prevent all pass holders from accessing any of the resorts for the rest of the season. Thank you counsel. You'll get a little rebuttal time. Chief Judge Holmes, may it please the court. Michael Hoffman for the Appalese Bail Resort Sink and the Bail Corporation. In October 2019, bail opened its first lifts. We were open for the next five months. For October, November, December, January, and February, and into March, our lifts were running, our SkiPro was keeping people safe, our staff was helping guests, and people were skiing and riding to their heart's content, including people who bought pre-season discounted Epic passes. Then COVID came, as everyone in this room knows, and reports linked its deadly spread to ski resorts, including ski resorts here in Colorado. It was not safe to ski after March 15, 2020, and so we closed. And I don't understand plaintiff to take objection to that. No one is saying that your company is a bad company for closing. That's not the point. The point is, why didn't you give them their money back? And to that point, let circumstances, would plaintiffs be entitled to a refund? And to be more specific, if you decided on March 14, hey look, I'm looking at my balance sheet, hey company, I'm looking at my balance sheet, oh you know, things aren't going very well, our expenses are pretty high, and so we're just gonna shut down because we need to save costs. Are you telling me that people who paid for Epic passes for the season could not get a refund of their money back? Of course not. I think the key is whether or not the closure is in good faith or in bad faith. Well, isn't the key what a season is? No, I don't think so, Your Honor. What they bought was a right to ski, some of them all-area passes, some of them more limited, for the entire ski season. What they, I'm sorry. For the season, right? No, Your Honor. What the complaint alleges and what the ski season. Isn't that what I just said? I don't believe so, Your Honor. I think you can't separate what a ski season is from the promise of access. So it's not, they don't have an academic interest in how long a ski season might be in an ordinary year. What they're interested in is access for the ski season. But it's clear, and everyone agrees, that when it's not safe to ski, there's no contractual obligation to provide access. And that's exactly the situation we have here on page 501. Well, what the argument is, is that historically, and as people have come to understand, is that a ski season is defined by snow conditions. You know, Park City is going to open this weekend because, hallelujah, we finally got some snow. But if they can, they'll stay open till Easter. But they may close earlier if there's nothing but rocks showing, right? But this is different than that expectation of the ski season. And, you know, if you look at the dictionary definitions of the season, it's the normal time that that particular activity is engaged in. And so you, the COVID pandemic is something out in left field from what normally are the parameters of the ski season. Would you agree with that? I would agree that the COVID pandemic was obviously an extraordinary event, and it made skiing unsafe. And I don't think that there is any notion that when we promised people access for the ski season, we meant we will allow you onto the list when it's not safe to do so. The interest of the consumers here is not, how long is the ski season abstract? It's, do I have a contractual right to access the list? Where do you import the word safety? And I mean, the concept of safety into access. I mean, access is access. I have a right to access this facility. Why, where does safety come into that equation? And note now, the question is not whether you should, it may be convenient to make the question whether you should close or not, but nobody's saying that. The question is, why don't you pay them when you close? So let me address both of those issues. First of all, where does safety come in the concept of access? I think it is in Colorado, the rule of contract interpretations, what are the reasonable expectations of the parties? Would you really expect us to provide access when it's dangerous to you, to our employees and to the community? I think the reasonable answer to that is no. I think the Ohio Supreme Court made this point in the recent Valentine decision. Second, I don't think in the appeal before your honors, this is even a disputed point. If you look at page six of the reply brief, the plaintiffs do not allege that they all should have provided access during the pandemic. And they give us a hard time for saying you're effectively saying you've got a right to be there when it's unsafe. They say on page six of the reply brief, and this is a key section, the opposite is true. Right after I say they're claiming that they have a claiming unreasonable right to access our resorts when it's dangerous, they're not claiming that. That's not what we're saying. So I think in the case in front of you, it's undisputed. We're not required to provide unsafe access. I think what they're arguing is that when you buy a season pass, you take a risk on the weather. You're gambling of how much does the pass cost and how realistically, how many ski days can I get in? And does that end up being an incentive? What they're arguing is when you make a decision to close that has nothing to do with ski conditions, if you had plenty of snow, then it's not the end of the season. It's a closure for a different reason. And you should compensate these people for their lost expectation of being able to ski so long as conditions allowed. Well, let me first disagree. I think that's the argument. I think that's the argument. Let me point out a couple of problems with it. First of all, I disagree that conditions allowed skiing. Conditions did not allow skiing. If they had allowed skiing, the plan should be saying we were wrong to close. It was not safe. We close lifts when it's not safe to do so. If the wind is up too high, we will close a lift. Under the plan's view, we owe them damages for that. That's point one. Safety is not separable from when we can provide access. Point two, you made the point. It's a good one. These are as to how much skiing there will be and how much they'll be able to take advantage of it. And we clearly say not eligible for a refund of any kind. So the contract allocates the risk. And I think this responds, Chief Judge Holmes, to your question, why don't we give the money back? There is a no refund clause and we performed. I mean, we were open. The plaintiffs say, well, we wouldn't expect a refund if it were our personal circumstances that led us not to take advantage of this pass. We were open for five months. Well, how does that help you? I mean, the reality is I decided to take my vacation on March 15th. My hard-earned vacation. Why? How does that help you? Because to say you performed, how did you perform? Here's how it helps me. They say, the plaintiffs say, we think that won't be, we are not entitled to a refund if our inability to ski is based on our personal circumstances. In your hypothetical, you bought this pass ahead of the ski season and you decided, based on whatever purpose and circumstances you may have, to ski after March 15th. Other people with the same pass made different decisions. They skied in December, January, February. Your Honor, in the hypothetical, you could have done it too. And I think that is a personal circumstance. It's very odd in this case that someone who says, I buy an Epic Pass ahead of every ski season. I do all my skiing in February. I take that month off and I ski the entire month in February. I get all my value and then bail shuts down. That person's not eligible for a refund. But someone who buys a pass and sits around, I shouldn't say sits around, but doesn't come to see us for five months because of their personal choice, gets a refund in the teeth of a no refund clause. Because as it relates to them, they did not get what they paid for. They did not get the expectation. The person who got it in February, they got their expectation because they took the opportunity to avail themselves of it in July, waiting until March 15. Did not. I got nothing. Well, you didn't get nothing. In your hypothetical, you availed yourself of your own choices about when you wanted to ski for that season. You had an equal right with every other person who bought the pass to come and ski. We were open. We were there. Others were running. They could have skied for five months. And this relates to the restitution claim. They say the whole purpose of this contract was frustrated. Well, in Colorado law, you have to show a total or near total destruction of the month. And we never said... Well, let's hypothetically, let's say, you know, you open at Thanksgiving and by Christmas, for whatever reason, you decide to close. I mean, does that change the argument? You're only open for one month as opposed to five months. Well, you say for whatever reason. It would depend on what the reason is. If it were a bad faith reason, obviously that would change. Okay, pandemic. We have a resurgence of COVID. I don't think that changed the legal analysis. There may be a different business judgment made in that case, given how little... Meaning a business judgment about whether to refund or a business judgment about whether to stay open. Oh, no. There's no business judgment about staying open. People were going to die. So we closed. And that's a judgment. You know, we're here today because we did that, but we saved lives. So the question is, if the resort makes the decision to close because of the pandemic, then it's a business judgment, you just said, whether or not they refund. Oh, there's no contractual requirement to refund. I think that's fair. I think it's undisputed. And when the plans are arguable, but we have a duty to do it in good faith, under Colorado law, the duty of good faith doesn't override and express contractual terms such as no refunds. Well, you said at the very beginning that if you chose any reason, some arbitrary reason to close down, then you'd have an obligation to refund. You said the no refund clause, if I understood you correctly, would not protect you in that situation. If you looked at your balance sheet and said, well, you know, we're running expenses high. And so we're just going to close and we're not going to give anybody any refunds. There's a no refund clause. At least I understood you to say that you would not have a legal protection by the no refund clause. Did I not understand you correctly? I don't think I meant to say exactly that. What I would say is if we close in bad faith, I think there would be a claim that plaintiffs could make based upon closure. But I think when you're talking about a closure that's in good faith. Well, they're saying that it's in bad faith. They're saying that you arbitrarily decided season over because of COVID, which was not the historical expectation of when the season ended. That's exactly the argument that was made, as I understood it articulated today, that that was in bad faith. Well, I don't I guess I don't understand the argument to be phrased that way. If it is accepted, as I think it is, that we do not have an obligation to provide access when it's unsafe, then it makes no difference whether we say the season is over or not. Yes, it does, because it determines whether you have to pay. That's the whole point. The argument that was made today, and we will listen to the audio later, but that was the argument, was that when if you declare a season over at a certain point, which is not consistent with the historical expectation, you acted in bad faith. And you just as if you said, well, my expense sheet is too high and therefore I'm calling time on this season. It's over. Well, if that's bad faith, their argument is if you do something that is inconsistent with historical expectations, that's bad faith. Close. You close to keep people safe, but you still owe us money. Well, a couple of points. I didn't read the complaint or the briefing in this case to make that claim. To the extent it's been made today, I think it is a nonstarter. There is not a legitimate or plausible basis for saying that we acted in bad faith by saying the season was over when it's undisputed that access to the ski lifts had to end for safety reasons. That decision was made in good faith. Saying whether you say the season is over or not is academic. It doesn't matter obligations under the contract, especially since there's nothing in the contract that says we are required to pay a refund under any circumstances. Counsel, can I just jump in there? Yes. I'm trying to understand your understanding. What is your understanding of the no refund clause? I mean, if you win on that claim, isn't the case over? I mean, why aren't you hanging your hat on no refunds? I guess I'm wondering. Well, I hope I am hanging my hat on no refunds. So no refunds is a contractual term of the contract. It is in the terms and conditions alleged in the complaint. And it's clear. And we performed according to that contract. So I do think the no refund clause in a situation where you acted in bad faith protects us from claims that we are required to pay refunds of any kind. So it doesn't matter when the season ended or not, right? Under your argument. It does not matter. Let me put it this way. If we had never said the season is over, we just closed the lifts and never said a word about it, the plaintiffs would be in the same position they are today. And they're not entitled to a refund in either circumstance. I thought you earlier said if you just decided to arbitrarily close the season after a month that there would be a refund. What I'm saying is my understanding of the law is if there is a bad faith, non-performance, you give me the money, I turn the signs, now it says closed. The no refund clause will not protect me. But if I'm acting in good faith... Well, and that's the argument they're making, right? I don't think they're making the argument that we took the money and suddenly closed, turned around the next day and closed or immediately closed. What we did was we were open for a substantial period of time. We had to close for human safety. That was in good faith. And the contract says no refunds. That should be the end of it. And I think it would be bad policy to say a company has to sort of sit there and decide I could close and protect human safety, but I might have to pay refunds. I'm going to risk it and stay open. We did the right thing. We did the legal thing. We didn't violate any contract or any state statute. The judgment below should be affirmed. Thank you, Your Honor. One minute, if you want it. Thank you for allowing a minute of rebuttal time. I'd like to use it to answer any questions that any of you may have. Well, I think the refund clause is probably the one that you should focus on. It says EPIC pass holders, where is it? EPIC passes were not eligible for a refund of any kind. Correct, Your Honor. And I don't know if the focus of your question is the of any kind language or the no refund clause in general. You can't prevail and get a refund when you have a contract that says no refund, that's my question. So the plaintiffs explicitly allege that their understanding was that, and I think you put it very well. And I guess, you know, their understanding is one thing, but their understanding has to be reasonable under the plain language, right? Correct. And the context of contracting. And I think that consumers understand generally no refunds to mean that they are taking a risk on the weather, as you put it. They're also taking a risk on their own personal circumstances. But they are not taking a risk of non-performance by the party who's making a promise and accepting their funds. And I think that that was found to be reasonable in the Altera decision and in two separate decisions relating to the closures of the Cedar Point resorts, the Walker decision and the Valentine decision, those allegations were accepted. And I think that is because we understand them to be reasonable in the context of a society where people understand that we have contracts and that if a promise is made and money is paid in connection with a contract, that either there will be performance or there will be money damages. What about the word access and the argument being that you do not contest that they could deny access as an act of protecting public safety? And if the language is access during the ski season and they can deny access, and if that's undisputed, why is it even relevant what they said about the ski season? I think with respect to access, the promise is for access. And when the access is not provided, that is a breach which gives rise to a default right to contract damages in the form of money damages. As I understood counsel to be reading from your reply brief, what they put forward was the notion that you do not contest that. As a matter of public safety, they had a right to deny access. Access during the ski season, splitting those two up, ski season access. You do not contest, that's the allegation and that's what I want to get a response to, that they had a right as a matter of public safety to deny access. And if they had a right to deny access in good faith, they operate in good faith in doing that, then it becomes irrelevant what they said about the ski season because you can be in anyway. Thank you. I think I understand the question better now. It's a bifurcated point. Access during the ski season. We're not talking now about how they characterize the ski season, we're talking about access. Do you or do you not believe that it would be an act of good faith to close and deny access because of a danger to public safety? If the answer is yes, why is it even relevant what they say about the ski season? So the answer is yes, and it is relevant what they say about the ski season because the reason behind the breach doesn't make it not a breach. Performance is due regardless of the reasons, good faith or bad faith, that a defendant may decide not to perform. And so when a breach occurs, regardless of the reasons for it, money damages become due under the operation of our contract law. Well, disaggregating your claims, you've got a breach of good faith claim, and that claim hinges on, at least as I understood you today, their characterization of the season. But if you're accepting that they could deny access in good faith, then it doesn't matter about their characterization of the season. It seems to me that, I mean, we're going claim by claim here, and it seems to me on your breach of good faith claim, that falls. If you accept the premise that they can deny access as a matter of public safety in good faith, because then it doesn't matter how they characterize the season. Whether they did it rightly or wrongly, they could keep you out. And I'm glad to be able to talk through this again, Your Honor, because with respect to that particular claim, going claim by claim to the breach of the implied covenant of good faith, with respect to that claim, the allegation and argument is not that the closure was in bad faith. The allegation and argument is that the decision to call the closure date the season end date, to make those the same thing, such that the season, you know, Veil's view of things was, well, the season is over, people got what they paid for with the season passed, we don't have any further obligation to perform, and therefore we're not going to issue refunds. I think it does matter with respect to the claim for breach of the implied covenant of good faith and fair dealing, that the term, the end date of the season was left open and was left to Veil's discretion. And the breach of the implied covenant and the bad faith comes in not with the closure, but with calling the closure date the season end date, instead of acknowledging we closed before the end of the season. All right. Thank you, counsel. Thank you. Thank you all for your time. Thank you for your arguments. Case is submitted.